```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/26/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
LUIS BRAVO,                                                   :
                                                              :
                                        Plaintiff,            :      1:22-cv-6736-GHW
                                                              :
                    -v -                                      :      MEMORANDUM OPINION &
                                                              :             ORDER
U.S. MARSHALS SERVICE, *et al.,*                              :
                                                              :
                                        Defendants.           :
                                                              :
------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

  Luis Bravo was arrested in the Dominican Republic on federal fraud charges brought in the Southern District of New York. While awaiting extradition, he alleges, he was held by the Dominican military for ten days in a "cage" in deplorable conditions. Exposed to vermin, Mr. Bravo was sick and depleted by the time he was extradited to the United States. During Mr. Bravo's short time in federal custody before his release, he received limited care. Following his release, Mr. Bravo discovered that he had contracted dengue fever while in the Dominican Republic. He brought this action claiming that the defendants violated his constitutional rights by virtue of, among other things, their indifference to his medical needs. Because his claims would extend the *Bivens* remedy to a new context—to cover, among other things, injuries suffered outside of the United States—and there are several special factors that counsel against extending *Bivens* to Plaintiff's claims, Defendants' motion to dismiss the complaint is GRANTED.

I. **BACKGROUND**

    A. **Facts**[1]

Mr. Bravo is a citizen of the United States. Third Amended Complaint, Dkt. No. 17 (the "TAC") ¶ 1. In 2019, he was living in the Dominican Republic. *Id.* Plaintiff alleges that on September 23, 2019, he was "arrested in the Dominican Republic by . . . Gabriel Moreno USMS and Hector Dominquez USMS . . . ." *Id.* Preliminary Statement. The officers told Mr. Bravo "they had an arrest warrant for him out of Florida . . . ." *Id.* Mr. Bravo "was then handed off immediately to the Dominican Republic Military . . . ." *Id.* His spine, and pelvis were injured when he was placed into an SUV following his arrest. Opp. at 2.

Mr. Bravo was held in an "inhumane cage" on a Dominican Republic military base for the next ten days as he awaited extradition to the United States. TAC Preliminary Statement. The conditions in his detention facility in the Dominican Republic were terrible. Mr. Bravo was not allowed to leave the cage for breaks. *Id.* ¶ 11. Mr. Bravo suffered extremes of heat and cold; an open hole in the floor served as his toilet; and when it rained, the cage became infested with rats. *Id.* ¶¶ 13-14. The bad conditions of his confinement in the Dominican Republic had consequences: Mr. Bravo asserts that he developed sores on his body that became infected. *Id.* ¶ 13. "Rough handling by the Dominican Republic military resulted in further damage to Plaintiff Bravo's spine, pelvis, and wrist." *Id.* ¶ 11. Mr. Bravo asserts that he was subject to "physical abuse such as getting dragged upstairs with a spinal injury." *Id.* ¶ 35. Plagued by a high fever during part of his time in detention in the Dominican Republic, Mr. Bravo "endured several seizures." *Id.* ¶ 12.

---

[1] The facts in this section are drawn from Plaintiff's third amended complaint (the "TAC"), Dkt No. 17, and his opposition to Defendants' motion to dismiss, Dkt No. 41 ("Opp."). For this motion, the Court must accept as true the facts alleged in the complaint. *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Because Plaintiff is litigating this action *pro se*, the Court also considers factual allegations in his opposition. *See, e.g., Braxton v. Nichols*, No. 08 Civ. 8568(PGG), 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

From Mr. Bravo's perspective, there was no need for him to be held in the Dominican Republic at all prior to his extradition to the United States because he "did not resist arrest nor challenge his extradition to the United States." *Id.* ¶ 10.  Mr. Bravo asserts that the "Dominican Republic government requested that Plaintiff Bravo be taken out of the country immediately after his arrest because they did not want to hold him," but that his multiple requests were "ignored" by the "American Embassy/U.S. Marshal Field Office." *Id.*  He asserts that the Government could simply have requested that he surrender himself, rather than having him be arrested and extradited. *Id.* ¶ 59.

After ten days in the cage, members of the Dominican military handed Mr. Bravo over to the U.S. Marshals for extradition to the United States. *Id.* ¶ 15.  At the airport, where the hand-over took place, Mr. Bravo asserts that he overheard a Dominican officer say that the Americans had told them to "hold him for a few days." *Id.* ¶ 16.  Mr. Bravo had a migraine headache on the flight to New York's John F. Kenney airport. *Id.* ¶ 17.  He was immediately taken to a hospital in Queens, but he complains that he was transferred there in a car, rather than an ambulance, "causing more pain to his spine and pelvis because he had no seatbelts . . . ." *Id.*

Mr. Bravo discussed his conditions with a doctor at the hospital but did not receive treatment there because "it was getting late, and Plaintiff Bravo had to be handed over to a jail." *Id.* ¶ 18; Opp. ¶ 6.  Unknown officers with the U.S. Marshals Service drove Mr. Bravo to "a private holding facility in Queens." TAC ¶ 19.  Mr. Bravo did not receive more treatment at the private prison facility "other than a few cotton balls to dry the open [sores] on his feet." *Id.*  Mr. Bravo was then taken to court—11 days after his arrest. *Id.*

Before he was presented in court, however, Mr. Bravo was interviewed by "Postal Police Officer Garcia." *Id.* ¶ 20.  Officer Garcia saw that Mr. Bravo's health was poor and "requested medical care." *Id.* ¶ 23.  But it was denied by court officers, and "a few minutes later," Mr. Bravo

3

was taken to court and informed of the charges that had led to his arrest—bank fraud, mail fraud, and wire fraud. *Id.* ¶ 24.

The court granted Mr. Bravo pretrial release. ¶ 25. But he was not released immediately. Instead, he claims, he was sent back to the Bureau of Prisons' Metropolitan Correctional Center (the "MCC") because the "finger printing machine stopped working during his release processing procedure" and "he had warrants." *Id.* at 1, ¶¶ 25-26, 51, 54. Mr. Bravo asserts that he spent a night in the MCC before he was released. After his release, Mr. Bravo made his way alone to stay with family members in Upper Manhattan. He was bed-ridden for two days "applying first aid to himself." *Id.* ¶ 28. He then returned to court for his arraignment. After his arraignment, "he was rushed to the emergency room once again." *Id.* ¶ 30. At the emergency room, he was diagnosed with dengue fever. *Id.* Mr. Bravo believes that he caught the disease during his period of incarceration in the Dominican Republic. *Id.* ¶ 31.

### B. Procedural History

Plaintiff, proceeding *pro se*, initially brought this action against United States Attorney General Merrick Garland. Dkt. No. 1. On August 16, 2022, he filed an amended complaint. Dkt. No. 3. In response to the complaint, the Court issued a Valentin Order on August 23, 2022. Dkt. No. 5. The Court construed Plaintiff's claims to arise under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"). However, because the complaint failed to allege any facts showing the personal involvement of the Attorney General, the only named defendant, the Court dismissed the claims against him and directed the Clerk of Court to add as defendants in his stead the two individual United States marshals who were allegedly responsible for the conduct at issue in the complaint. The Court directed the U.S. Attorney's Office to provide information to Plaintiff regarding the identity of the Doe Defendants pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997).

On September 7, 2022, Plaintiff filed a second amended complaint. Dkt. No. 10. And after the Government responded with the identities of the two John Doe defendants, Plaintiff filed the third amended complaint, naming them as defendants. TAC. That complaint is the operative complaint in this case. The complaint also named the U.S. Marshals Service as defendant.

Construed broadly, the complaint raises five separate categories of constitutional claims: First, for the method of Mr. Bravo's arrest, deriving from the fact that he was extradited, rather than being contacted for self-surrender. TAC ¶¶ 43-46 (Count Four "Violations of the Eighth Amendment – Extradition as a Fugitive). Second, for the alleged excessive use of force against him during his apprehension and detention in the Dominican Republic. TAC at 1 ¶¶ 9, 11-15, 47-50 (Count Five "Violations of the Fourteenth Amendment – Excessive Force"). Third, for the conditions of his confinement in the Dominican Republic in the "cage," including deliberate indifference to his medical needs while there. TAC at 2 ¶¶ 9, 11-15, 32-35 (Count One "Violations of the Eighth Amendment – The Cage"). Fourth, for unlawful extended detention at the MCC, following the award of pre-trial release. TAC ¶¶ 25-26, 40-42 (Count 3 "Violations of the Eighth Amendment – Additional detention time at MCC"). And fifth and finally, for deliberate indifference to his medical needs in New York following his return to the United States. TAC ¶¶ 18-23, 36-39 (Count Two "Violations of the Eighth Amendment—Denial of care in New York").

The complaint also raises claims against the defendants for "negligence." Some of these negligence claims implicate conduct in the Dominican Republic, and some relate to his treatment in the United States. TAC ¶¶ 51-55 (Count 6 "Negligence"; Count Seven "Unintentional Negligence"). The conduct that underlies these claims is largely the same as that upon which Mr. Bravo bases his constitutional claims. And, finally, there are references in Mr. Bravo's submissions to the duration of the proceedings prior to the resolution of his criminal trial, which could be construed as a petition for *habeas corpus* as a collateral attack on his conviction and sentence.

On May 10, 2023, Defendants filed a motion to dismiss the third amended complaint. Dkt. No. 38 (notice of motion); Dkt. No. 39 (memorandum of law in support of motion) ("Mem."). Defendants' motion presents several principal arguments. First, Defendants argue that Plaintiff's constitutional claims should be dismissed because they would require the Court to extend the *Bivens* remedy beyond the contexts in which it has been recognized by the Supreme Court. Second, Defendants argue that Plaintiff's negligence claims should be dismissed because the "exclusive remedy for nonconstitutional torts by a government employee acting within the scope of his employment is a suit against the government is a suit against the government under the FTCA." Mem. at 22 (quoting *Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994)). And, they argue, because Plaintiff failed to exhaust his administrative remedies, any implied FTCA claims must be dismissed. Third, they argue that the individual defendants would be entitled to qualified immunity. And, finally, they argue that any speedy trial violations were already addressed in the Court's response to Mr. Bravo's separate petition for habeas relief.

Plaintiff filed his opposition on May 24, 2023. Plaintiff expressly disclaimed all of the causes of action asserted in his complaint apart from his denial of medical care claims. He writes: "Plaintiff will simplify this action by only focusing on the Constitutional Violations relating to denial of medical care/8th Amendment violations. This court can disregard all other counts listed in this action." Opp. at 2. Mr. Bravo does not address any of the other arguments by the government in support of dismissal of his remaining claims. Mr. Bravo's opposition focuses on the unabandoned deliberate indifference claims, pointing to the Supreme Court's recognition of a *Bivens* claim arising out of deliberate indifference to an inmate's medical condition that resulted in the prisoner's death in *Carlson v. Green*, 446 U.S. 14 (1980). The opposition makes clear that the claims that he continues to pursue include claims for deliberate indifference to his medical condition both while he was incarcerated in the Dominican Republic and following his return to the United States. Opp. at 2-5.

As noted above, Mr. Bravo includes additional facts in his opposition regarding the alleged deliberate indifference to his medical condition.

Finally, on June 7, 2023, Defendants filed a reply. Dkt. No. 42 ("Reply"). In their reply, Defendants highlighted the fact that Plaintiff had expressly abandoned the majority of his claims and argued that their motion as to those claims should be granted as a result. Nonetheless, Defendants reiterated their previous arguments.

## II. LEGAL STANDARD

### A. Standard of Review Under Rule 12(b)(1)

"A court presented with a motion to dismiss under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." *De Masi v. Schumer*, 608 F. Supp. 2d 516, 523–24 (S.D.N.Y. 2009) (internal quotation marks and alterations omitted) (citing *Homefront Org., Inc. v. Motz*, 570 F. Supp. 2d 398, 404 (E.D.N.Y. 2008); *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008)).

Pursuant to Rule 12(b)(1), the Court must dismiss a claim when it "lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted); *see also Arar*, 532 F.3d at 168 ("A federal court has subject matter jurisdiction over a cause of action only when it 'has authority to adjudicate the cause' pressed in the complaint." (quoting *Sinochem Int'l Co. v. Malay Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007))). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). When considering a motion made pursuant to Rule 12(b)(1), "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Raila v. United States*, 355 F.3d 118, 119 (2d Cir. 2004).

7

"[T]he United States, as sovereign, is immune from suit save as it consents to be sued." *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981) (internal quotation marks and citation omitted). The United States, therefore, "cannot be sued at all without the consent of Congress," and "when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed." *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983). "The doctrine of sovereign immunity is jurisdictional in nature, and therefore to prevail, the plaintiff bears the burden of establishing that her claims fall within an applicable waiver." *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citations omitted).

### B. Standard of Review Under Rule 12(b)(6)

A complaint need only contain "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a claim that does not meet this pleading standard for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion filed under Rule 12(b)(6), the court accepts as true the facts alleged in the complaint and draws all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And "[t]he tenet that a court must accept as true" a complaint's factual allegations does not apply "to legal conclusions." *Iqbal*, 556 U.S. at 678 (alterations omitted).

To survive dismissal, a complaint must allege sufficient facts to state a plausible claim. *Twombly*, 550 U.S. at 570. A claim is plausible when the plaintiff pleads facts to support the reasonable inference that the defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The plaintiff's claim must be more than merely "speculative." *Twombly*, 550 U.S. at 545. And a reviewing court must "draw on its judicial experience and common sense" to determine

plausibility. *Iqbal*, 556 U.S. at 679 (citation omitted).

When reviewing a motion to dismiss, a court must generally "limit itself to the facts stated in the complaint." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006) (quoting *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)). But a court may consider "any 'written instrument' . . . attached to [the complaint] as 'an exhibit' or . . . incorporated in it by reference." *Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020) (quoting Fed. R. Civ. P. 10(c) (other citations omitted)). A court may also consider a document "solely relie[d]" on by the plaintiff if it "is integral to the complaint." *Id.* (quotation and brackets omitted). A document is "integral to the complaint" if the complaint "relies heavily" on the document's "terms and effect." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016); *see also Littlejohn v. City of N.Y.*, 795 F.3d 297, 305 n.3 (2d Cir. 2015) (holding that a court may "consider the plaintiff's relevant filings with the EEOC" on a motion to dismiss if the filings "are integral to and solely relied upon by the complaint" (quotation and brackets omitted)). A plaintiff must "*rely* on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough." *Nicosia*, 834 F.3d at 231 (emphasis added) (quoting *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006).

### C.  Standard of Review for *Pro Se* Submissions

Because Plaintiff is proceeding *pro se*, the Court must liberally construe his submissions and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see also, e.g., Nielsen v. Rabin,* 746 F.3d 58, 63 (2d Cir. 2014) ("Where . . . the complaint was filed *pro se,* it must be construed liberally to raise the strongest arguments it suggests." (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)). Courts must afford *pro se* plaintiffs "'special solicitude' before granting motions to dismiss." *Quadir v. New York State Dep't of Labor*, 39 F. Supp. 3d 528, 536 (S.D.N.Y.

9

2014) (quoting *Ruotolo v. I.R.S.,* 28 F.3d 6, 8 (2d Cir. 1994)). Even so, "dismissal of a *pro se* complaint is . . . appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)).

### III.  DISCUSSION

#### A.  Abandonment of Claims by Plaintiff

Mr. Bravo has expressly abandoned all of his claims with the exception of his claims asserting a violation of his constitutional rights as a result of the defendants' alleged indifference to his medical needs. Even under "the relaxed pleading standard afforded to *pro se* litigants," Mr. Bravo's express abandonment of his other claims should be given effect. *Omosefunmi v. Weiss*, 198 F.3d 234 (2d Cir. 1999). "Ultimately, the question of abandonment is one of intent . . . ." *Id.* (quoting *Austin v. Ford Models, Inc.*, 149 F.3d 148, 155 (2d Cir. 1998)). Mr. Bravo expressed in his opposition an unmistakable intention to abandon his other claims. Opp. at 2 ("This court can disregard all other counts listed in this action."). And Mr. Bravo failed to respond to the arguments presented in Defendants' briefing with respect to his other claims. *Romain v. State Farm Fire & Cas. Co.,* No. 21-CV-6609 (JS)(ARL), 2022 WL 16798055, at *3 n. 3 (E.D.N.Y. Nov. 8, 2022) (deeming *pro se* plaintiffs' claims abandoned when they were not addressed in their opposition to defendant's motion to dismiss).

Mr. Bravo's abandoned claims will be dismissed without prejudice for the reasons described in the Government's memorandum of law.[2] The Court's analysis thus focuses on Mr. Bravo's remaining claims.

---

[2] While Mr. Bravo has abandoned his *Bivens* and negligence claims, as well as any purported claim for *habeas corpus* relief, the Court has nonetheless considered the merits of those claims based on the briefing presented by the United States. None of Mr. Bravo's other potential claims under *Bivens* are cognizable because they all implicate a new context for the application of the *Bivens* remedy and special considerations counsel against its expansion, as the Government argues in its memorandum of law. And Mr. Bravo's negligence claims are preempted by the Federal Tort Claims Act (the

10

B.  *Bivens* Claims

1.  Legal Standard

In 1971, in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, the Supreme Court held that a plaintiff had an implied private right of action for damages against federal officers who violated the plaintiff's Fourth Amendment rights against unreasonable search and seizure when they handcuffed him inside his home without a warrant.  In the more than forty years since that decision, the Supreme Court has created a new implied right of action in only two other cases:  (1) under the Fifth Amendment's due process clause for gender discrimination arising out of a Congressman's firing of his female secretary, *Davis v. Passman*, 442 U.S. 228 (1979), and (2) under the Eighth Amendment's cruel and unusual punishment clause arising out of prison officials' failure to treat an prisoner's asthma, which resulted in the prisoner's death, *Carlson v. Green*, 446 U.S. 14 (1980).

In recent years, the scope of relief available under *Bivens* has been sharply curtailed.  In *Ziglar v. Abbasi*, 198 L. Ed. 2d 290, 137 S. Ct. 1843 (2017), the Supreme Court understored that "expanding the *Bivens* remedy is now a 'disfavored judicial activity.'"  Recently, the Supreme Court reiterated "that recognizing a *Bivens* cause of action is a 'disfavored judicial activity.'" (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).  That is because "[w]hen an issue involves a host of considerations that must be weighed and appraised, it should be committed to those who write the laws rather than those who interpret them."  *Id.* at 1857 (citing *Bush v. Lucas*, 462 U.S. 367, 380 (1983)) (internal quotation marks omitted).  "When asked to imply a *Bivens* action, 'our watchword is caution.'" *Egbert v. Boule*, 213 L. Ed. 2d 54, 142 S. Ct. 1793, 1803 (2022) (quoting *Hernandez v. Mesa*, 206 L. Ed.

---

"FTCA"), and Mr. Bravo has not shown that the individual officers were not acting within the course of their employment or that he exhausted his administrative remedies.  *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) (citing *McNeil v. United States*, 508 U.S. 106, 113, 113 S. Ct. 1980, 124 L.Ed.2d 21 (1993)) ("The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court.  This requirement is jurisdictional and cannot be waived.").  The Court resolved Mr. Bravo's claim for *habeas* relief brought on Speedy Trial Act grounds in *Bravo v. United States*, No. 1:18-CR-0283-GHW, 2022 WL 4072876, at *2 (S.D.N.Y. Sept. 2, 2022).

2d 29, 140 S. Ct. 735, 742 (2020)). In *Ziglar*, the Court re-emphasized that the creation of a new private right of action under *Bivens* must be carefully scrutinized.

As the Supreme Court has instructed, this careful scrutiny requires courts to engage in a process to determine whether it is appropriate for the judiciary to extend a *Bivens* remedy to the claims of a particular case. A court must first determine whether the claim "presents a new *Bivens* context." *Id.* at 1803. "If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." *Ziglar,* 137 S. Ct. at 1859. In *Ziglar*, the Supreme Court presented a non-exhaustive list of considerations to examine if a case is meaningfully different, including:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk or disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860.

If the court determines that the claim at issue differs meaningfully from previous *Bivens* cases, the court must then determine if it is appropriate to imply a new private right of action to that claim. In *Ziglar,* the Supreme Court affirmed the long-held precedent that a *Bivens* remedy "will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Ziglar*, 137 S. Ct. 1857 (citing *Carlson,* 446 U.S. at 18). The Court explained that the "special factors" inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed. Thus, to be a 'special factor counselling hesitation,' a factor must cause a court to hesitate before answering that question in the affirmative." *Id.* at 1857-58. That is, a court begins with the premise that the judiciary should not readily extend a *Bivens* remedy to new

12

claims, and before a court does so, it should consider a number of factors to determine whether "Congress would want the Judiciary to entertain a damages suit in a given case." *Id.* Among those factors is whether alternative remedies exist for addressing the constitutional violations raised by the claims of a particular case. The Supreme Court held that "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.*

"Put another way, 'the most important question is who should decide whether to provide for a damages remedy, Congress or the courts?' . . . [i]f there is a rational reason to think that the answer is "Congress"—as it will be in most every case . . . no *Bivens* action may lie. Our cases instruct that, absent utmost deference to Congress' preeminent authority in this area, the courts 'arrogat[e] legislative power.'" *Egbert*, 142 S. Ct. at 1803.

### 2. Application

#### i. *Bivens* Claims Against the U.S. Marshals Service Must Be Dismissed

Plaintiff's *Bivens* claims against the U.S. Marshals Service must be dismissed. The Supreme Court has expressly declined to extend *Bivens* liability to federal agencies or other entities. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 484-86 (1994); *see also O'Donoghue v. United States Soc. Sec. Admin.*, 828 F. App'x 784, 787 (2d Cir. 2020) (summary order). As a federal entity, the U.S. Marshals Service cannot be held liable under *Bivens*. Plaintiff's *Bivens* claims against it are, therefore, dismissed.

#### ii. Plaintiff's Deliberate Indifference Claims Implicate a New *Bivens* Context That Should Not Be Extended

##### a. *Bivens* Does not Extend to Injuries Suffered Abroad

While the Supreme Court recognized a claim for deliberate indifference to an inmate's medical needs in *Carlson*, Plaintiff's claims would expand the *Bivens* remedy to a new context. First, all of the conduct that took place in the Dominican Republic—outside of the jurisdiction of the

13

United States, and at the hands of foreign government officials—clearly implicates a new *Bivens* context. The Supreme Court has not recognized a *Bivens* remedy for events that have occurred outside of the United States. And the Supreme Court noted in *Hernandez v. Mesa*, that the *Bivens* remedy was a "more limited" "federal analog" to actions brought under 42 U.S.C. § 1983, which the Court presumed would not apply extraterritorially. *Hernandez v. Mesa*, 206 L. Ed. 2d 29, 140 S. Ct. 735, 747 (2020). The application of *Bivens* to injuries sustained outside of the United States would be a dramatic extension of *Bivens*.

Multiple factors counsel hesitation against extending *Bivens* to give Mr. Bravo a remedy for injuries that he sustained abroad. In *Hernandez*, the Supreme Court considered several factors that counsel against extending the remedy to injuries sustained outside of the United States that apply with equal, if not greater, force here, including the effect of judicial intervention in the regulation of foreign affairs. Extending *Bivens* to conduct by foreign government actors—such as the military of the Dominican Republic, which maintained the "cage" in which Mr. Bravo was confined—may have a "potential effect on foreign relations." *Hernandez*, 140 S. Ct. 735, 744. The Executive Branch, not the judiciary, is responsible for managing the relationship of the United States with foreign states and their militaries.

And, as in *Hernandez*, the limitations of the remedial scheme made available by Congress to injuries inflicted within the United States counsels caution for the extension of the *Bivens* remedy in this context. "It is 'telling' that Congress has repeatedly declined to authorize the award of damages for injury inflicted outside our borders." *Id.* at 747 (quoting *Ziglar*, 137 S. Ct. 1862). Congress has waived the sovereign immunity of the United States to allow certain tort actions to be brought against it under the Federal Tort Claims Act (the "FTCA"). The FTCA expressly excludes from that waiver of sovereign immunity "[a]ny claim arising in a foreign country," 28 U.S.C. § 2680(k), which strongly suggests that Congress did not wish to expand the liability of the United States with respect

to claims arising in a foreign country—such as the claims brought by Mr. Bravo related to his treatment in the Dominican Republic.

### b. *Bivens* Does not Extend to Plaintiff's Domestic Injuries

Second, the deprivation of medication care that Mr. Bravo alleges took place in the United States would also apply *Bivens* in a new context. At the outset, the constitutional right at issue is different here than the one recognized by the Supreme Court in *Carlson*. Mr. Bravo was a pretrial detainee at the time of the events at issue here. Therefore, his claims arise under the Fifth Amendment of the United States Constitution, rather than the Eighth. *See, e.g.*, *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000). "The constitutional right is different here, since *Carlson* was predicated on the Eighth Amendment and this claim is predicated on the Fifth." *Ziglar*, 137 S. Ct. at 1864.

Moreover, to the extent that Mr. Bravo complains regarding the level of care afforded to him by the staff during his brief detention at a private prison facility in Queens—that conduct too arises under a new *Bivens* context. *See Minneci v. Pollard,* 565 U.S. 118, 120 (2012) (declining to extend *Bivens* to Eighth Amendment suit against prison guards at a private prison).

And finally, the severity of the alleged indifference to Mr. Bravo's medical needs varies substantially from that presented to the Supreme Court in *Carlson*. In *Carlson*, the defendants had been "fully apprised" of the "gross inadequacy" of the medical conditions at the plaintiff's prison. *Carlson*, 446 U.S. at 17 n. 1. They had also been fully apprised of the nature and severity of the plaintiff's medical condition. *Id.* The defendants failed to provide the plaintiff with medical care for 8 hours after an asthmatic attack. *Id.* And they gave him medication that actually made his attack more severe; and treated him with medical equipment that was known to be ineffective. *Id.* All of that misconduct resulted in the plaintiff's death.

The Court acknowledges Mr. Bravo's concerns, as alleged. However, the Court cannot but note that his allegations of deliberate indifference to his medical care are dramatically less severe than the conduct at issue in *Carlson*. Mr. Bravo was only in federal custody for a short period of time—much of which, as Mr. Bravo notes, at a time when he was expected to be released promptly on his own recognizance. The defendants were not "fully apprised" of the alleged deficiencies in the care provided to Mr. Bravo prior to his release. They are not alleged to have provided affirmatively deleterious treatment to him. Most of Mr. Bravo's alleged acute health crises occurred outside of the custody of the Marshals Service. And significantly Mr. Bravo, thankfully, is still alive and working toward his recovery. When it comes to the extension of the *Bivens* remedy "even a modest extension is still an extension." *Ziglar*, 137 S. Ct. at 1864. Mr. Bravo's allegations involve conduct that is substantially less severe than that at issue in *Carlson*, and therefore, raise a new *Bivens* context. *See, e.g., Edwards v. Gizzi,* No. 20-CV-7371 (KMK), 2022 WL 309393, at *7 (S.D.N.Y. Feb. 2, 2022) (finding allegation that officers broke prisoner's arm and left him in extreme pain to be "meaningfully different from a failure to provide life-saving medical care to an inmate with asthma").

Special factors counsel hesitation in expanding *Bivens* to capture Mr. Bravo's allegations regarding deliberate indifference to his medical needs in the United States. Again, "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." *Ziglar*, 582 U.S. at 148. An example of just such legislative action can be found in the Prison Litigation Reform Act ("PLRA"). As the Court in *Ziglar* explained,

> Some 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs . . . [T]he Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

16

*Ziglar*, 137 S. Ct. at 1865.

The availability of alternative remedial schemes also counsel against expansion of the *Bivens* remedy in this case. *Egbert*, 142 S. Ct. at 1806. The FTCA provides for money damages for claims "arising . . . out of assault, battery," and other torts with regard to acts or omissions of officers of the U.S. Government. 28 U.S.C. § 2680(h). "The Second Circuit has not yet decided whether, in the wake of Abbasi, the availability of an FTCA action precludes a Bivens remedy." *Scott v. Quay*, No. 19CV1075MKBSMG, 2020 WL 8611292, at *8 (E.D.N.Y. Nov. 16, 2020). However, numerous courts in this district have found the FTCA to be an alternative remedy to *Bivens*. *See Edwards v. Gizzi*, No. 20-CV-7371 (KMK), 2022 WL 309393, at *8 (S.D.N.Y. Feb. 2, 2022) (collecting cases). This Court finds persuasive the analysis presented by Judge Karas in *Edwards* and joins him in agreeing "with the many cases which have found the existence [of the] FTCA to be a special factor counseling hesitation in extending *Bivens*." *Id.* at * 9.

### IV. LEAVE TO AMEND

"It is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). However, leave to amend may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (internal citation omitted). "Although district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings, leave to amend need not be granted when amendment would be futile." *Terry v. Inc. Vill. Of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016). "Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend." *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 62 (2d Cir. 2016) (quoting *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 132 (2d Cir. 1993)).

Amendment of Plaintiff's remaining *Bivens* claims would not be productive. They involve injuries sustained abroad and during a short period of pretrial detention in the United States. The claims clearly raise a new *Bivens* context and substantial reasons counsel caution against the extension of the remedy to include the circumstances alleged by Mr. Bravo. For that reason, amendment of those claims would be futile, and leave to amend them is denied.

## V. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED. Plaintiff's *Bivens* claims against the U.S. Marshals Service are dismissed with prejudice. Plaintiff's unabandoned *Bivens* claims for the deprivation of medical care in the Dominican Republic and New York are dismissed with prejudice. Plaintiff's remaining abandoned claims raising under *Bivens* and the FTCA are dismissed without prejudice. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 38, to enter judgment for Defendants, and to mail a copy of this order to Plaintiff.

SO ORDERED.

Dated: July 26, 2023
New York, New York

_____
GREGORY H. WOODS
United States District Judge